1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

| | |
|---|---|
| TERESA M. BIVENS,<br><br>                              Plaintiff,<br><br>       v.<br><br>CAROLYN W COLVIN, Commissioner of<br>Social Security, [1]<br><br>                              Defendant. | Case No. 3:12-cv-05383-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

13
14
15
16
17
18
19
20
21

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be reversed and that this matter should be remanded for further administrative

proceedings.

22

                        FACTUAL AND PROCEDURAL HISTORY

23
24

        On November 25, 2008, plaintiff filed an application for disability insurance benefits,

alleging disability as of September 16, 2007, due to posttraumatic stress disorder ("PTSD"),

25
26

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

depression, a chronic pain syndrome, problems with her wrists and right shoulder, left hip pain, learning disabilities, panic attacks, and headaches. See Administrative Record ("AR") 32, 171, 189. That application was denied upon initial administrative review on June 2, 2009, and on reconsideration on September 21, 2009. See AR 32, 110, 118. A hearing was held before an administrative law judge ("ALJ") on October 15, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 61-102.

On December 7, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 32-51. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 16, 2012, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981. On May 4, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's final decision. See ECF #3. The administrative record was filed with the Court on August 28, 2012. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in failing to accommodate the limitations stemming from her somatoform disorder in assessing her residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a

ORDER - 2

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record.").  "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[2]

_____

[2] As the Ninth Circuit has further explained:

. . . It is immaterial that the evidence in a case would permit a different conclusion than that
which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
substantial evidence, the courts are required to accept them.  It is the function of the
[Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
not try the case de novo, neither may it abdicate its traditional function of review.  It must
scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
rational.  If they are . . . they must be upheld.

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Dr. Raney

In mid-May 2009, plaintiff was examined by James Raney, M.D., who diagnosed her with a "pain disorder associated with both psychological factors and a medical condition, a recurrent, moderate major depressive disorder, and mild chronic PTSD, and gave her a global assessment of functioning ("GAF") score of 55 indicating "moderate symptoms . . . only."[3] See AR 415.  In terms of plaintiff's ability to function, Dr. Raney opined in relevant part:

---

[3]  A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal.

But for the pain problem she does have the ability to perform simple and repetitive tasks as well as detailed and complex tasks.

There are no . . . restrictions to accepting instructions from supervisors or interacting with coworkers and the public.

Work activities can be done consistently without special or additional instruction.  Only the pain and physical disabilities may interfere.

Her psychiatric conditions should not interrupt regular attendance in the workplace or complete a normal workday or workweek without interruptions. The proviso there is that she should probably <u>not work</u> in a situation where her patients are elderly or demented.

With the exception of triggers of posttraumatic stress disorder she should be able to deal with the usual stress encountered in a competitive work [sic].

AR 415-16.  Plaintiff argues the ALJ erred in failing to discuss Dr. Raney's opinion in his decision.  The Court agrees.

As noted above, the ALJ must explain why "significant probative evidence has been rejected." <u>Vincent</u>, 739 F.3d 1394-95; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield <u>v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).  Defendant argues Dr. Raney's opinion does not constitute significant probative evidence, because Dr. Raney "did not describe any specific limitations resulting from" the impairments he diagnosed. ECF #17, p. 12.  But Dr. Raney clearly indicated plaintiff's ability to work could be adversely impacted by her impairments.  For example, his statement that "[b]ut for the pain problem" she could perform simple and repetitive tasks as well as detailed and complex ones (AR 416), suggests she might not be able to perform such tasks due to the pain she experiences.  Further, given that Dr. Raney diagnosed her with a pain disorder, it is not at all clear that plaintiff's physical impairments and limitations are being referenced here.

---

2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34).

ORDER - 6

1    The same is true in regard to Dr. Raney's statement that "[o]nly the pain" might interfere

2    with plaintiff's ability to do work activities consistently without special or additional

3    instructions, even though Dr. Raney also referenced her physical disabilities as well.  That is, it is

4    quite possible that Dr. Raney was referring to the effects of plaintiff's pain disorder here instead

5    of or along with any physical aspects thereof.  Similarly, Dr. Raney's remark that "[w]ith the

6    exception of triggers of" PTSD plaintiff "should be able to deal with the usual stress encountered

7    in a competitive work" setting (id), strongly indicates that where those triggers are present she

8    would or may not be able to deal therewith.  This is not to say that the ALJ would be required to

9    accept Dr. Raney's conclusions or to find that such suggested limitations are in fact supported by

10    the evidence in the record, but merely that he should have considered them.  Further, such error

11    cannot be said to be harmless as argued by defendant.[4]

12

13    B.    Dr. Suffis

14    A functional assessment form was completed in late November 2008, by Marc Suffis,

15    M.D., a treating orthopedist, who found that she was "permanently limited to no crawling, and

16    occasional grasping, keyboarding, reaching above the shoulders, and performing wrist motion

17    and fine manipulation," and that she "could lift/carry/push/pull 10 pounds seldomly, 5 pounds

18    occasionally, and 3 pounds frequently." AR 42; see also AR 391.  The ALJ, though, stated he

19    "cannot give significant weight" to those findings because:

20

21

22    _____

      [4] An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v.

23    Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial
      to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th

24    Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").  Because the ALJ
      did not discuss Dr. Raney's evaluation report and conclusions contained therein, it is unclear whether or not and to

25    what extent he would have accepted those conclusions.  As such, it is far from certain that such conclusions would
      not have affected the ALJ's ultimate disability determination.  On the other hand, any error on the part of the ALJ to

26    discuss or consider Dr. Raney's conclusion that plaintiff "should probably not work in a situation where her patients
      are elderly or demented" the Court finds to be harmless (AR 416 (emphasis in original)), because the ALJ did not
      find her to be capable of performing work involving such patients (see AR 49-50).  Accordingly, any such limitation
      adopted by the ALJ would not have affected his finding of non-disability.

ORDER - 7

. . . Dr. Suffis . . . apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  Further, his assessment contrasted sharply with the other evidence, which renders it less persuasive.  Finally, even if the claimant [sic] residual functional capacity was as limited as Dr. Suffis determined at the time, the record also shows that her capacity improved significantly later.

AR 43.  Plaintiff argues the ALJ erred in so finding here.  The Court disagrees.

First, the opinion of a physician that is premised largely on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility.  See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d 595, 601.  As defendant points out, the vast majority of Dr. Suffis's clinical findings consist of plaintiff's subjective reports of pain and tenderness.  See AR 387, 390, 392, 394, 396, 402-3, 444, 446-47, 449.  Treatment notes from Dr. Suffis do reference an MRI of the left wrist that "demonstrates [a] very small TFCC tear with lunate cyst" (AR 396), "mildly decreased" wrist dorsiflexion (AR 390) and decreased active wrist and elbow motion (see AR 387).  Those minimal findings, however, hardly support the severity of limitations assessed by Dr. Suffis.  Accordingly, given the ALJ did not err in discounting plaintiff's credibility concerning her subjective complaints as discussed in greater detail below, this was a proper basis for rejecting Dr. Suffis's assessment.

The ALJ also was not remiss in rejecting that assessment because its sharp contrast with other medical opinion source evidence in the record rendered it less persuasive.  Plaintiff argues the ALJ erred here because he "provided no detail" as to what that medical source evidence was.  ECF #16, p. 13.  The Court agrees with defendant, however, that this finding must be considered in the context of the ALJ's very detailed summary and analysis of the objective medical evidence in the record overall.  See AR 37-46.  It thus is reasonable to assume the ALJ was referring to the

ORDER - 8

1    other opinion source evidence discussed in that summary that conflicts with Dr. Suffi's

2    assessment. See Magallanes, 881 F.2d at 755 (court may draw "specific and legitimate inferences

3    from the ALJ's opinion").

4            Among that other medical opinion source evidence is the early April 2009 functional

5    assessment of Santosh Kumar, M.D., in which, as the ALJ noted, he found plaintiff to have "the

6    physical capacity to perform full-time work at light to medium exertion and could lift/carry up to

7    25 pounds frequently, and up to 35 pounds occasionally," to "grasp, push/pull, and perform fine

8    manipulation with both hands and use bilateral foot for repetitive movement," to "bend, squat,

9    and kneel frequently," and to "crawl, climb, and reach above her shoulder occasionally." AR 44;

10   see also AR 523, 530.  With respect to that assessment, the ALJ stated:

11
12          I give significant weight to Dr. Kumar's opinion that the claimant had the
             residual functional capacity to perform work at the light to medium exertional
13          level with some non-exertional limitations.  After reviewing the claimant's
             records, Dr. Kumar had strongly supported his conclusion by pointing out that
14          the record does not contain any objective or medically/surgically resolvable
             deficit in any of the alleged impaired areas, other than the surgically attended
15          right wrist.  After conducting a detailed examination, he also logically
             deduced that the claimant's exhibited pain and limitations during the
16          examination and range of motion test were out of proportion.  I find that Dr.
             Kumar has made a convincing assessment of the claimant with strong
17          supportive evidence.  Therefore, his opinion is granted with [sic] great weight
             even though he did not have [sic] treating relationship with the claimant.
18
19
20   AR 45.

21           Plaintiff argues the ALJ erred in giving more weight to Dr. Kumar's assessment than he

22   did to that of Dr. Suffi, stating that Dr. Kumar only saw her one time and only considered the

23   objective findings of the physical examination he performed when making his assessment, and

24   not her somatoform disorder or chronic pain.  But as discussed in greater detail below, no

25   showing has been made as to what additional functional limitations stem from her somatoform

26   disorder that are supported by the record and that the ALJ did not properly take into account in

     ORDER - 9

this case.  The same is true in regard to plaintiff's chronic pain.  In addition, Dr. Kumar clearly took into account plaintiff's reports of pain when evaluating her, but found those reports to be far out of proportion to the objective findings he obtained.  See AR 526-31.  Plaintiff has shown no improprieties on the ALJ's part with regard to those findings.

Dr. Kumar, and therefore the ALJ, did not err in relying on them rather than on plaintiff's own subjective complaints.  The record, furthermore, contains other medical source opinions that conflict with the functional assessment Dr. Suffis provided, and that the ALJ noted and gave sufficient reasons for giving weight thereto.  For example, in early May 2009, William J. Stump, M.D., a neurologist, and James F. Green, M.D., an orthopedic surgeon, examined plaintiff and "concluded that [she] was physically capable of performing at the same level that she did prior to her work-related injury on September 16, 2007," her alleged disability onset date. AR 45; see also AR 560.  In late May 2009, another examining physician, Dennis A. Stumpp, M.D., saw plaintiff and also concluded she could return to that job, further stating there was "no objective basis upon which to recommend work restrictions." AR 574; see also AR 45. [5]

Lastly, the ALJ properly noted that "*even if* [plaintiff's] residual functional capacity was as limited as Dr. Suffis determined at the time" he evaluated her, the evidence in the record – including the findings from the three examining physicians discussed above – also shows her "capacity improved significantly" subsequent thereto. AR 43 (emphasis added); see Morgan, 169 F.3d at 599 (credibility of claimant regarding allegations of disability may be discounted based

---

[5] In regard to the opinions of these examining physicins, the ALJ found in relevant part:

> I give most weight to the[ir] opinions . . . because they had the benefit and the opportunity of reviewing the claimant's most up-to-date medical records before forming their opinions. These . . . evaluators drew their conclusions after a detailed review of the claimant's record and a thorough examination/interview with the claimant.  Moreover, they provided [sic] long explanation of the evidence they relied on in forming their opinions.  Finally, their opinions are consistent with the rest of the record.

Id.

ORDER - 10

on medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Nor has plaintiff

specifically challenged this basis for rejecting Dr. Suffis's functional assessment.[6]  Accordingly,

the ALJ's rejection thereof shall not be overturned.

II.      The ALJ's Assessment of Plaintiff's Credibility

            Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

Tonapetyan , 242 F.3d at 1148.

            To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

            In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

_____

[6] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued
with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145,
1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived);
Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief
ordinarily will not be considered).

ORDER - 11

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. <u>See</u> <u>id.</u>

The ALJ in this case discounted plaintiff's credibility in part because the record shows

she "consciously attempted to portray [more] pain, weakness and limitations than are . . . actually

present in order to increase the chance of obtaining benefits," and "includes multiple statements

from her medical providers and evaluators strongly suggesting that [she] has exaggerated

symptoms and limitations" and engaged "in possible malingering or misrepresentation." AR 47.

Contrary to plaintiff's assertion, the ALJ did not actually determine that she was malingering

here, but rather properly relied on the evidence in the record of symptom exaggeration as a basis

for finding her to be less than fully credible. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (ALJ may consider

"ordinary techniques of credibility evaluation" such as reputation for lying and other testimony

that "appears less than candid").

The ALJ further noted the objective clinical findings in the record indicated plaintiff's

"pain was far out of proportion to what would be expected." AR 47; <u>see</u> <u>also</u> AR 48.  A

determination that a claimant's subjective complaints are "inconsistent with clinical

observations" can satisfy the clear and convincing requirement. <u>Regennitter v. Commissioner of</u>

<u>SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues that the ALJ found her somatoform

disorder was a severe impairment, and that this accounts for the lack of objective findings related

to her pain.  Although this may be one explanation for the lack of objective findings, given the

evidence in the record from her treating and examining medical sources concerning her symptom

magnification noted above and summarized by the ALJ in his decision, the ALJ's interpretation

of the evidence in the record is also reasonable. <u>See</u> <u>Allen</u>, 749 F.2d at 579 (if evidence admits of

ORDER - 12

1    more than one rational interpretation Commissioner's decision must be upheld).

2         It is true that a claimant's pain testimony may not be rejected "solely because the degree

3    of pain alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748,

4    749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (en

5    banc)); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Fair v. Bowen, 885 F.2d

6    597, 601 (9th Cir. 1989).  The same is true with respect to a claimant's other subjective

7    complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (finding that while

8    Bunnell was couched in terms of subjective complaints of pain, its reasoning extended to non-

9    pain complaints as well).

10        As discussed elsewhere herein, though, the ALJ provided other clear and convincing

11   reasons for discounting plaintiff's credibility.  For example, in addition to discounting plaintiff's

12   credibility on the basis of symptom exaggeration, the ALJ also pointed to responses that she

13   made to some of the medical sources who examined her that "were vague at times," leaving the

14   impression she "may have been less than entirely candid." AR 47; see Tommasetti v. Astrue, 533

15   F.3d 1035, 1040 (9th Cir. 2008) (upholding ALJ's adverse credibility determination in part on

16   ALJ finding claimant to be vague witness in regard to alleged period of disability and was not

17   clear or certain as to his own work capabilities).

18        The ALJ also noted that the record showed plaintiff "did not make good effort in her pain

19   management program treatment," that "spotty and poor participation [was] documented in that

20   program" and that there was evidence she had "not been entirely compliant in taking prescribed

21   medications," suggesting her "symptoms may not have been as limiting as [she] has alleged."

22   AR 48; see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may consider motivation in

23   rejecting symptom testimony); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020

ORDER - 13

(9th Cir. 1992); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason

for not following prescribed course of treatment "can cast doubt on the sincerity of the

claimant's pain testimony"). [7]

The ALJ further found plaintiff to be not fully credible for the following reasons:

Although the claimant has received treatment for the allegedly disabling
physical impairments, that treatment has been essentially routine and/or
conservative in nature, except for a right wrist surgery performed in
November 2007 for the diagnosed cyst and TFCC.  Even though she
underwent some invasive treatments, including right wrist surgery and steroid
injections, which suggest the alleged symptoms were genuine, the record also
shows that no physical condition has result [sic] in significant impairment in
the claimant's ability to perform basic, work-related activities.  Moreover, the
claimant has not taken any narcotic based pain relieving medications in spite
of the allegations of quite limiting pain.

AR 47.  This too overall was a proper basis for discounting plaintiff's credibility. See <u>Johnson v.</u>

<u>Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative

treatment only to be suggestive of lower level of pain and functional limitation).  While plaintiff

did receive treatment – some of which as noted by the ALJ are more invasive such as surgery

and steroid injections – also as noted by the ALJ the record shows plaintiff did not seek narcotic

medication management for her supposedly disabling pain, which would seem to be a reasonable

thing to do if that level of pain was truly being experienced.

Lastly, the ALJ discounted plaintiff's credibility in part because:

Another factor influencing the conclusions reached in this decision is the
claimant's generally unpersuasive appearance and demeanor while testifying
at the hearing.  The claimant's description of the severity of the pain and
limitations has been so extreme as to appear implausible.  It is emphasized

---

[7] The ALJ further noted here that while plaintiff "has alleged a lack of money as the explanation for the infrequent
treatment reflected in the record," there was "no evidence that [she] has pursued any low-income health care
options, which one might expect if [she] truly were unable to work due to the symptoms alleged in this case." <u>Id.</u>;
see <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641 (9th Cir. 1995) (ALJ "must 'examine the medical conditions and personal
factors that bear on whether [a claimant] can reasonably remedy' his impairment") (citations omitted); see also
<u>Gamble v. Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment
because of inability to afford it).  Again, plaintiff has not challenged this particular finding,

ORDER - 14

1   that this observation is only one among many being relied on in reaching a
2   conclusion regarding the credibility of the claimant's allegations and the
    claimant's residual functional capacity.

3   AR 48.  An ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his
4   or her testimony.  See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v.
5   Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).  Thus, inclusion of personal observations of the
6   claimant in the ALJ's findings "does not render the decision improper." Nyman v. Heckler, 779
7   F.2d 528, 531 (9th Cir. 1986).  As noted by the ALJ, however, a claimant's subjective
8
9   complaints may not be rejected "solely on the basis of" personal observations. SSR 95-5p, 1995
10  WL 670415 *2.

11          Here, though, the ALJ failed to describe in any detail what it was about the appearance of
12  plaintiff at the hearing that called her credibility into question.  Although the ALJ did point to the
13  extreme nature of the description of the severity of her pain and limitations, this essentially is the
14  same as the ALJ's findings regarding symptom exaggeration discussed above.  Accordingly, the
15  Court finds this is not a clear and convincing reason for discounting plaintiff's credibility in this
16  matter.  Nevertheless, the fact that one of the reasons for discounting plaintiff's credibility was
17  improper does not render the ALJ's credibility determination invalid, as long as it is supported
18  by substantial evidence in the record, as it is in this case for the other reasons discussed above.
19
20  See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554
21  F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's
22  credibility, he presented other valid, independent bases for doing so, each with "ample support in
23
24  the record").

25  III.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity
26          Defendant employs a five-step "sequential evaluation process" to determine whether a

ORDER - 15

1   claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found

2   disabled or not disabled at any particular step thereof, the disability determination is made at that

3   step, and the sequential evaluation process ends. See id. If a disability determination "cannot be

4   made on the basis of medical factors alone at step three of that process," the ALJ must identify

5   the claimant's "functional limitations and restrictions" and assess his or her "remaining

6   capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL

7   374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to

8   determine whether he or she can do his or her past relevant work, and at step five to determine

9

10  whether he or she can do other work. See id.

11      Residual functional capacity thus is what the claimant "can still do despite his or her

12  limitations." Id. It is the maximum amount of work the claimant is able to perform based on all

13  of the relevant evidence in the record. See id. However, an inability to work must result from the

14  claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those

15  limitations and restrictions "attributable to medically determinable impairments." Id. In

16  assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

17  related functional limitations and restrictions can or cannot reasonably be accepted as consistent

18

19  with the medical or other evidence." Id. at *7.

20      The ALJ in this case found plaintiff had the residual functional capacity:

21      **. . . to perform less than light work . . . She can never climb ladders,**
        **ropes, or scaffolds. She can climb ramps and stairs occasionally. She can**
22      **never crawl. She can handle and finger frequently. She is limited to**
        **unskilled jobs. She is limited to occasional interaction with the public.**
23

24  AR 36 (emphasis in original). Plaintiff argues the ALJ erred here because although he found she

25  had a somatoform disorder that was a severe impairment, he did not account for limitations

26  stemming from that disorder in the above RFC assessment. The Court disagrees, as plaintiff has

ORDER - 16

not shown any such limitations were unaccounted for by the ALJ.

In support of his argument, plaintiff points to the "great weight" the ALJ gave to the opinions of Heather Kroll, M.D., David H. Fordyce, Ph.D., and Tara R. Campbell, VRC, CDMS, who concluded that physically there did "not really seem to be any reason she could not resume fairly normal functioning," but that "[a]t this point . . . her big inhibitor is fear of pain and fear of ongoing injury with activation." AR 42, 369.  Plaintiff also points to the opinions of Dr. Green, Dr. Stump and Rebecca C. Fischer, M.D., who concluded that "her pain symptoms are a physical expression of her emotional and psychological distress." AR 562.  She argues "[t]hese findings accounted for [her] reports of constant pain and weakness in her wrists," which contradicts the ALJ's own findings concerning handling and fingering. ECF #16, p. 8.

None of the above medical sources, however, assessed plaintiff with limitations in these areas that are more severe than those found by the ALJ.  Indeed, Dr. Green opined that plaintiff had no such limitations. See AR 564.  Dr. Fischer, furthermore, felt "that there is no psychiatric reason that [plaintiff] is unable to work in any position which she is physically able to do," and that "in fact, regular employment would likely be beneficial in terms of psychiatric symptoms." AR 562.  Drs. Green and Stump for their part opined that plaintiff was "physically capable of performing at the same [work] level that she did prior to" her industrial injury. AR 560; see also AR 574.  Dr. Kroll, Dr. Fordyce and Ms. Campbell offered no opinion in regard to functional limitations other than to stated that plaintiff "is unfortunately far more disabled than she needs to be following her industrial injury" for "unclear" reasons. AR 374.

In other words, plaintiff has not pointed to any reliable objective clinical findings or other medical evidence in the record to support her assertion that she has more restriction in her ability to handle and finger than found by the ALJ.  To the extent plaintiff is arguing the above opinions

ORDER - 17

*can* account for a more restrictive RFC assessment, that possibility – such as it is given what the medical sources who provided them actual concluded as noted herein – is insufficient to establish error on the part of the ALJ.  Indeed, the ALJ's interpretation of the objective medical evidence in the record is at least equally reasonable, if not more so, and therefore it must be upheld.  See Allen, 749 F.2d at 579.  On the other hand, given the ALJ's failure to properly consider the opinion of Dr. Raney discussed above, it cannot be said at this time that the ALJ's assessment of plaintiff's residual functional capacity is completely accurate.

IV.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record."  Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

ORDER - 18

substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

functional capacity. See AR 96-97.  In response to that question, the vocational expert testified

that an individual with those limitations – and with the same age, education and work experience

as plaintiff – would be able to perform other jobs. See AR 97-98.  Based on the testimony of the

vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

significant numbers in the national economy. See AR 49-50.

The Court agrees with plaintiff that in light of the ALJ's error in failing to properly

consider and evaluate the opinion of Dr. Raney, and thus in failing to properly assess her residual

functional capacity discussed above, it cannot be said that the hypothetical question the ALJ

posed to the vocational expert is completely accurate.  Accordingly, it also cannot be said at this

time that the vocational expert's testimony, and therefore the ALJ's step five determination, is

supported by substantial evidence.  On the other hand, also as discussed above, because it has not

been shown that the ALJ failed to adopt all of the functional limitations stemming from

plaintiff's somatoform disorder, the ALJ did not err in not including any additional limitations

therefrom in the hypothetical question he posed.

IV.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

ORDER - 19

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain in this case with regard to the medical evidence in the record from Dr. Raney, and thus with respect to plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 28th day of March, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 20